CITY OF ZANESVILLE, OHIO, Appellant, v MOHAWK DATA SCIENCES CORPORATION, Respondent.

Fourth Department, November 4, 1983

APPEARANCES OF COUNSEL

*Felt, Hubbard, Hopkins, Bach & Corrou* (*Thomas P. Bogan* of counsel), for appellant.

*Helmer, Shaffer & Johnson* (*Grant E. Johnson* of counsel), for respondent.

### OPINION OF THE COURT

SCHNEPP, J.

The issue is whether the City of Zanesville, Ohio, may be forced to arbitrate disputes under a broad arbitration provision in a public contract entered into on its behalf by an unauthorized agent in violation of statutory restrictions requiring city council approval and competitive bidding. The essential facts are not in dispute.

On July 22, 1980 the assistant director of administration of the City of Zanesville signed a contract for the lease by the city of computer hardware from Mohawk Data Sciences Corporation, the value of which exceeded $5,000. The city agreed to pay a base monthly rental and maintenance charge of $1,401 for 57 months at which time it had the option to purchase the equipment by payment of an amount equal to three base monthly charges. Mohawk

delivered the equipment, and the city began to make monthly payments pursuant to the agreement. A supplemental agreement for the use and maintenance of additional equipment was later entered into. On July 24, 1981 the city treasurer advised Mohawk that because the contract had not been approved by the city council as required by Ohio law further payments would be withheld pending possible corrective municipal legislation. The city terminated the contract without further explanation on November 18, 1981.

The agreement contained a provision specifying that "any controversy or claim arising out of this Agreement, or any dispute arising out of the interpretation or application of this Agreement, which the parties hereto are unable to resolve, shall be settled by arbitration * * * and that this Agreement shall be governed by the laws of the State of New York." Following Mohawk's service of a demand of arbitration, the city sought a stay on the ground that no valid contract existed because the statutory procedures required by Ohio law had not been followed. Mohawk opposed the application on the grounds that: (1) New York law which permits municipal corporations to enter into leasing contracts without public bidding applies to any dispute under the contract and (2) the city should be estopped from challenging the validity of the contract since Mohawk has satisfactorily performed its obligations and the city has accepted the benefits of this performance. Special Term denied the city's petition without explanation. On this appeal we conclude that the contract is invalid and void and the arbitration clause contained therein is unenforceable. We further hold that the doctrine of equitable estoppel is inapplicable.

Section 735.05 of the Ohio Revised Code Annotated provides that when the director of public service makes a contract involving more than $5,000 the expenditure must be authorized and directed by ordinance of the city legislative authority and the contract then awarded to the lowest and best bidder after public advertisement. Concededly, these statutory requirements were not complied with. The contract was not signed by the director of public service, no city council ordinance authorized the expenditure and public bids were not sought.

Municipal contracts, such as this, which violate express statutory provisions are invalid in New York (*Granada Bldgs. v City of Kingston,* 58 NY2d 705, 708; see, also, *New York Tel. Co. v Town of North Hempstead,* 41 NY2d 691, 695-696; 40 NY Jur, Municipal Corporations, § 815, p 128). "It is established law in this State that where there is a lack of authority on the part of agents of a municipal corporation to create a liability, except by compliance with well-established regulations, no liability can result unless the prescribed procedure is complied with and followed." (*Lutzken v City of Rochester,* 7 AD2d 498, 501.) The creation of an obligation against a municipality by way of contract can only result from "an affirmative determination to create the obligation in the form and manner provided by statute". (*Gardner v Town of Cameron,* 155 App Div 750, 759, affd 215 NY 682.)

Likewise, in Ohio a contract made on behalf of a municipal corporation by its agents in excess of their authority is invalid (*Welch v City of Lima,* 89 Ohio App 457, 465; *Hawley v City of Toledo,* 47 Ohio App 246). An agreement made which subjects an Ohio municipal corporation to pecuniary liability in an unauthorized manner, or by evasion of statutory requirements, is illegal and void (21 Ohio Jur 3d, Counties, Townships, and Municipal Corporations, § 826, p 399; see, generally, 10 McQuillin, Municipal Corporations [3d ed], § 29.02).

Both Ohio and New York, for policy reasons, choose to place the risk of loss on parties dealing with municipal corporations (40 NY Jur, Municipal Corporations, § 817, pp 130-131; 21 Ohio Jur 3d, Counties, Townships, and Municipal Corporations, § 814, p 381). Those dealing with officers or agents of municipal corporations must at their peril see to it that such officers or agents are acting within their authority (*Schumacher Stone Co. v Village of Columbus Grove,* 73 Ohio App 557, 563) and they have no right to presume that the persons with whom they are dealing are acting within the line of their authority (*McDonald v Mayor of City of N. Y.,* 68 NY 23, 27). Since the authority of such officers and agents is a matter of public record, there is a conclusive presumption that persons dealing with them know the extent of their authority (*Lindlots Realty*

*Corp. v County of Suffolk,* 278 NY 45, 53; see, generally, 10 McQuillin, Municipal Corporations [3d ed], § 29.04). Although application of this rule results in occasional hardship, it has been held that the loss should be ascribed to the negligence of the person who failed to ascertain the authority vested in the public agency with whom he dealt and "statutes designed to protect the public should not be annulled for his benefit." (*McCloud & Geigle v City of Columbus,* 54 Ohio St 439, 453.) Common sense dictates this course of action since statutory requirements could otherwise be nullified at the will of public officials to the detriment of the taxpaying public, and funds derived from public taxation could be subjected to waste and dissipation.

We hold, therefore, that Mohawk's contract with the city is void and unenforceable under either the law of New York or Ohio. The city had the general power to act in relation to the subject matter of the contract but the city council never authorized it to do so. There was no compliance with the statutory prerequisites to such an agreement. Mohawk's argument that under New York law the leasing contract may be made without public bidding (General Municipal Law, § 103) is inapposite, since the city possessed no underlying authority to contract with Mohawk and was not legally bound to the agreement. Thus, it is immaterial whether New York or Ohio bidding requirements apply to this agreement.

Further, the claim that the city is estopped from challenging the validity of the agreement is without merit. The failure of the city council to approve the expenditure was not a mere technical irregularity but went to the heart of the contract's validity. In New York, the "[m]ere acceptance of benefits by the city under a contract made without authority does not estop a municipal corporation from challenging the validity of the contract and from denying liability for materials furnished or services rendered under a contract not made or ratified by a board or officer acting under authority conferred by law and in the manner prescribed by law." (*Seif v City of Long Beach,* 286 NY 382, 387.) Estoppel "may not be invoked to prevent a municipality from disclaiming the unauthorized or unlawful acts of its employees and thereby give vitality to otherwise illegal

conduct" (*Matter of Moritz v Board of Educ.*, 60 AD2d 161, 166; see, also, *Granada Bldgs. v City of Kingston*, 58 NY2d 705, 708, *supra; Lutzken v City of Rochester*, 7 AD2d 498, 501, *supra;* 21 NY Jur, Estoppel, Ratification, and Waiver, § 81, p 118). The principle of law is the same in Ohio (21 Ohio Jur 3d, Counties, Townships, and Municipal Corporations, § 831). Statutes which confer the power to contract and prescribe the mode by which a municipality may exercise that power are construed as mandatory and compliance therewith is regarded as a condition precedent to the power to enter into a valid contract (*City of Lancaster v Miller*, 58 Ohio St 558, 575-576).

Since the contract in its entirety is invalid and void, the arbitration clause contained therein is likewise of no force and effect and cannot be enforced (*Matter of Village of Canastota [Queensboro Farm Prods.]*, 36 NY2d 793, affg 44 AD2d 276; *Village of Tarrytown v Woodland Lake Estates*, 19 NY2d 660; see, also, 8 Weinstein-Korn-Miller, NY Civ Prac, par 7501.23). If there is no valid agreement to arbitrate "that concludes the matter and a stay of arbitration will be granted" (*Matter of County of Rockland [Primiano Constr. Co.]*, 51 NY2d 1, 7; see, also, *Matter of Weinrott [Carp]*, 32 NY2d 190).

Accordingly, the order of Special Term should be reversed and a stay of arbitration should be granted.

DILLON, P. J., DOERR, BOOMER and O'DONNELL, JJ., concur.

Order unanimously reversed, with costs, and motion for stay of arbitration granted.